WESTFIELD GAS AND MILLING COMPANY *v.* HINSHAW.

[No. 2,812.    Filed June 9, 1899.]

NEGLIGENCE.— *Proximate Cause.— Fires.— Natural Gas.* — Plaintiff sued defendant for damages on account of loss of property by fire. The complaint alleged that by reason of defendant's failure to supply gas in a safe manner, a stove in its office became overheated and set fire to the building, which was communicated to plaintiff's property. The special verdict showed that the fire originated in a building leased by the person acting as secretary and treasurer of defendant company, and that the real cause of the fire was the condition of the stove and the dangerous condition of the fire permitted therein by him. *Held,* that the proximate cause of the damage to plaintiff

was not within the scope of the cause of action set forth in the complaint.

From the Clinton Circuit Court.    *Reversed.*

*John C. Farber, F. E. Gavin, C. F. Coffin* and *T. P. Davis,* for appellant.

*H. C. Sheridan* and *Christian & Christian,* for appellee.

BLACK, J.—In the complaint of the appellee it was shown that the appellant was a corporation engaged in furnishing natural gas for light and fuel to the people of Westfield and vicinity, for compensation to be paid by each user; "that on or about the 27th of December, 1894, the appellant carelessly and negligently failed to supply said natural gas in a safe manner, and carelessly and negligently failed to control the pressure of said natural gas, and carelessly and negligently provided a defective and insufficient regulator to control the pressure of said gas; and on account of said carelessness and negligence of said defendant aforesaid, and, without any fault or negligence on the part of the plaintiff, the pressure of said gas in the night-time of said day, and after the consumers had retired, increased to a dangerous degree for use, which fact was well known to the defendant; and owing to the carelessness and negligence of defendant, aforesaid, and without any fault or negligence on the part of the plaintiff, said increased pressure caused the fires then burning in the stoves of the office of said defendant and in the building in which defendant's office was located to increase dangerously, so as to heat said stoves red hot, and the flames of said fires to pour out of said stoves, and the light therein burning to flame up to the ceiling of said gas-office of the building in which the same was located, thereby setting fire to said office and building, and consuming the same, and without any fault or negligence on the part of the plaintiff; and said fire communicated to the building in which the business of the plaintiff was located, which building was situated immediately west of the build-

ing in which said fire originated, the plaintiff then being en-
gaged in the wagon and carriage business, and the repairs
thereof, and which said fire, without any fault or negligence
on the part of the said plaintiff, consumed plaintiff's stock
in trade, consisting of wagons," etc., "of the value of," etc.,
"and to plaintiff's damage in the sum of,".etc.

There was an answer in denial, and a jury returned a
special verdict consisting of interrogatories and the answers
of the jury thereto. The court overruled the appellant's mo-
tion for judgment in its favor upon the special verdict.

In the special verdict it was found, among other facts for
which we need not take space, that the appellant's gas wells
were some miles from the town of Westfield, and the gas was
conducted from them through a three-inch iron pipe, known
as the high pressure main, to the east side of the town, where
this main was connected with a low pressure main by a regu-
lator. There was also a two-inch pipe leading from the high
pressure main over the regulator to the low pressure main.
This two-inch pipe was called a "by-pass." There was also
a two-inch pipe leading out of the regulator to the by-pass,
and there were gate-valves on the by-pass, one near its east
end, and another near its west end. There was an escape
valve on the low pressure main west of the place where
the by-pass entered it. On the 27th of December, 1894,
this escape valve was set to open, and, it was found, would
in fact open, and permit the gas to escape into the air, when
the pressure of gas in the low pressure main exceeded six
pounds to the square inch. Some of the findings were also
to the effect that the escape valve on the low pressure main
was clogged up, and not in good working order. The reg-
ulator used was first class and the best natural gas regu-
lator in use at that date, and it was in good working order
at the time in question. It had a high pressure valve,
which was set to work at a pressure of twenty-two pounds.
It also had a low pressure valve, set to work at a pressure
of six pounds. The appellant had three and one-half miles

of mains in said town west of the regulator. On the 27th of December, 1894, the supply of gas from the wells did not come with sufficient pressure to operate the high pressure side of the regulator and cause it to work. During the daytime the full supply of gas from the wells was permitted to go to the consumers through the by-pass, which was left wide open from the high pressure valve to the low pressure main. The supply of gas was weak, and the consumers did not have sufficient gas in the daytime for heating and cooking purposes in that month; but the pressure, or supply, increased at night, beginning to increase about nine o'clock, and the increase was steady. The pressure of gas at the wells was reduced as the weather became colder, and there was a cold spell of weather at the time in question.

One William B. Hill was secretary and treasurer of the appellant and one of its directors. He had charge of the regulator and the gas lines. During the evening of December 26th he visited the regulator, and partly closed the valve on the by-pass. Later in the evening, about ten o'clock, when the pressure was from three to four pounds, he again visited the regulator and turned off the gas from the by-pass, and, after noting the effect, he raised the valve of the by-pass three thirty-second parts of an inch, and so left it, and went to notice the effect upon fires in business places in the town. At the time of the fire in question, the gas was being supplied through the by-pass in this condition, and the low pressure regulator was in use, and the pressure in the low pressure main at the time of the fire was "six pounds or more."

The fire originated between twelve and one o'clock at night in the front room of a building leased by its owners to said Hill, the appellant not having any part of the building leased. In this room the appellant had a desk in which Hill kept the books of the appellant. At this place he collected and received money on gas bills due the appellant, and here the directors of the appellant held their monthly meetings as such. Whatever use was made by the appellant of

this room, such use was at the request of Mr. Hill, and for his convenience. The fire originated in Mr. Hill's gas stove placed upon a pine box in said room. The back of the stove was about eighteen or twenty inches from a pine door. The stove was used by Hill without any pipe to carry off the heat or smoke, and there was a round hole about three inches in diameter in the back of the stove through which heat and flames of burning gas were passing toward the pine door when the fire was first discovered, and the pine door and its casing had then caught fire, and the building was thus set on fire from said stove. The stove, it was stated by the jury, was not in a safe condition to burn natural gas. Mr. Hill had left the gas fire burning in the stove, and he had adjusted the supply of gas to the stove by turning the valve by which the gas was supplied to it. He had adjusted the valve of the stove about eleven o'clock that night in such a manner that the natural gas was let into the stove in a larger quantity than ordinary, for the purpose of heating the room to a temperature sufficiently warm to preserve some flowers from freezing. The appellant did not at any time prior to the fire in question give any directions as to the management of this stove, and did not have any control or management of the stove. The building in which appellee's property was destroyed was about twenty-five feet from the building so set on fire from said stove.

It was not alleged in the complaint that the appellee's loss was occasioned by any failure properly to supply gas to the appellee, or any failure properly to regulate the pressure of gas supplied to the appellee, or to the premises in which his property was situated. The wrongs attributed to the appellant in the complaint were: (1) That it negligently failed to supply the gas in a safe manner; (2) that it negligently failed to control the pressure of the gas; and (3) that it negligently provided a defective and insufficient regulator to control the pressure of the gas. It was alleged that, on account of the negligence so specified, the pressure of the

gas increased to a dangerous degree for use, which fact the appellant knew, but the only use mentioned whereby injury was said to have resulted was in stoves in the office of the appellant; and it is stated that the increased pressure which was "on acount of" the specified negligence, caused the dangerous increase of the fires then burning in said office, and this increase set fire to the building, from which fire was communicated to the neighboring building, and thus the appellee's property was destroyed. The complaint does not attribute negligence in permitting the fire to burn in the stoves mentioned, or in the manner of using it in such stoves, or in failing to attend and guard or regulate such fires, but the negligence charged was in failing to supply the gas in a safe manner and in failing to control its pressure.

The increased pressure of gas in the appellant's low pressure mains caused the fire, but it does not certainly appear that the pressure was greater than that for which the regulator was adjusted, or that the regulator was improperly adjusted. But, aside from any question of uncertainty upon this point, it appears that the real cause of the fire was the condition of the stove from which it caught, and the dangerous fire permitted therein. While the burning of the buildings was caused by the strong pressure of the gas, which produced the flames from which the pine door caught fire, the proximate cause was the improper and unsafe adjustment of the valve of the stove. This valve was so adjusted by Mr. Hill for the purpose of supplying heat for the preservation of flowers in his office. The thing which thus was the proximate cause of the fire was not done by the appellant, or for it by Mr. Hill as its agent. He was not acting in this matter within the scope of his duties as the servant of the appellant. He was using for his own purpose his own property, over which the appellant had no control. If it can be said that, in permitting a steady increase of the pressure of the gas up to six pounds to the square inch throughout the town, there was negligence on the part of the appellant, there was an in-

tervening cause in the independent human action for which the appellant was not responsible, the actor not being, as to such act, its agent.   And as we have seen, such proximate cause was not within the scope of the cause of action set forth in the complaint.

The judgment is reversed, and the case is remanded, with instruction to sustain the motion of the appellant for judg-ment in its favor upon the special verdict.